NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0131n.06

**No. 17-1601**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CLARA PATRICK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| STATE FARM FIRE AND CASUALTY | ) | COURT FOR THE EASTERN |
| COMPANY, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**FILED**

Mar 14, 2018
DEBORAH S. HUNT, Clerk

BEFORE: SILER and LARSEN, Circuit Judges; BLACK, District Judge.[*]

BLACK, District Judge. After Clara Patrick's house burned down and State Farm denied her insurance claim, she sued for breach of contract. And after a three-day trial, a jury returned a verdict in State Farm's favor. Patrick now challenges one of the jury instructions from the trial. We affirm.

I.

In January 2014, Patrick bought a house in Detroit, Michigan for $3,600. The house was uninhabitable at the time because it was missing almost everything but walls and a roof. It had no running water, no working toilets, no furnace, no kitchen cabinets. The water lines had frozen. Scrappers had stripped the other pipes.

---

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation

About a month later, Patrick applied for homeowner's insurance from State Farm. Despite the house's condition, Patrick told State Farm that the plumbing and heating were adequate, properly installed, and maintained. She also told State Farm that the house would be her primary residence, occupied 52 weeks per year. Based on these representations, State Farm issued a standard homeowner's policy.

In early April 2014, the house caught fire. A Detroit Fire Department Captain and a fire investigator both determined that the fire had been intentionally set. The investigator also noted that the fire was unlike most fires set by vandals because vandals typically strip wiring and other valuable metals before starting fires, but the house's wiring and aluminum downspouts were untouched.

After the fire, Patrick filed a claim with State Farm seeking over $100,000 for damage to the house and loss of personal property allegedly inside the house during the fire. State Farm denied the claim, in part because Patrick's policy required her to reside in the house, which she had never done. Instead, she had continued to live where she had lived for more than a decade prior to buying the house: with her adult son in a different house on the other side of the city.

Patrick then sued in state court, and State Farm removed the case to federal court. At trial, the parties agreed that Patrick could not recover unless she resided in the house at the time of the fire, but disagreed on the definition of "reside." State Farm contended that "reside" meant to actually live in the house; Patrick contended that "reside" also encompassed the intent to live there in the future. The district court refused to issue a jury instruction incorporating either definition. Instead, the district court left to the jury the determination of what "reside" meant under the policy, and issued this instruction:

> Plaintiff, in this case, is seeking damages under a homeowners policy of insurance. This policy provides such coverage so long as Plaintiff "resided" at the

insured premises. Under the definition of reside, a person may simultaneously reside at multiple dwellings.

. . .

This language let Patrick argue that she simultaneously resided in the house with her son (because she lived there) and in the house she had purchased (because she intended to live there in the future). But the jury rejected her argument, and returned a verdict in State Farm's favor. Patrick now challenges the legal accuracy of the jury instruction.

II.

We review Patrick's challenge de novo. *United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010). And we will reverse only if we find that the jury instructions, on the whole, were confusing, misleading, or prejudicial. *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 881 (6th Cir. 2007). Because this is a diversity action, we apply Michigan's substantive law. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009).

The Michigan Supreme Court's decision in *Heniser v. Frankenmuth Mutual Insurance Co.*, 534 N.W.2d 502 (Mich. 1995), serves as the major premise for Patrick's challenge. *Heniser*, she argues, held that "reside" has a legal meaning encompassing the intent to live in a home in the future. The jury instruction at issue here never mentioned future intent, she contends, so it misstated the law. Because courts should construe insurance policies against their drafters, she continues, and because insurance companies would reap millions in inequitable profits if they could charge premiums for policies they would not honor until policy owners had moved in to the insured homes, she claims, we should reverse and remand for a new trial.

We find this argument devoid of merit because Patrick misrepresents *Heniser*'s holding. She quotes the first paragraph from section II.C. of the opinion, but omits the first sentence: "While the definition of 'reside' may be ambiguous in other contexts, there is no ambiguity in

this case." *Id.* at 505. Indeed, rather than holding that "reside," when used in a homeowner's policy, encompasses the intent to live in the home in the future, *Heniser* held that the term requires actual occupancy. *Id*. at 510.

And even had *Heniser* come out the other way, the challenged jury instruction would not have misstated the law or prejudiced Patrick. By noting that a person can simultaneously reside at multiple dwellings, the instruction allowed Patrick to present her theory of the case to the jury.

In short, the district court crafted a prudent instruction that avoided misstating the law and still allowed Patrick to present her theory of the case. In this we find no error.

III.

For these reasons, we affirm the district court's judgment.